UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES S. CHIZMAR,

                             Plaintiff,                        14-cv-2181 (PKC)

           -against-                        MEMORANDUM
                                                AND ORDER

ACCO BRANDS CORPORATION and
STAPLES, INC.,

                             Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

              Plaintiff James S. Chizmar filed this action, alleging that a line of "hybrid notebinders" manufactured and sold by the defendants (the "Flex Binders") infringed two patents owned by him, U.S. Patent No. 7,347,640 (the "'640 Patent") and U.S. Patent No. 8,277,140 (the "'140 Patent"). On May 8, 2015, the Court granted summary judgment to the defendants. (Dkt. No. 60.) 2015 WL 2408818 (S.D.N.Y. May 8, 2015). An appeal from that decision is now pending before the Federal Circuit. (Dkt. No. 82.)

              The defendants now move for attorneys' fees and costs under section 285 of the Patent Act, 35 U.S.C. § 285, which permits reasonable attorney fee awards to the prevailing party "in exceptional cases." (Dkt. No. 72.) The defendants also move for an order requiring Chizmar to post an appeal bond of not less than $75,000 pursuant to Rule 7, Fed. R. App. P. (Dkt. No. 95.) For the following reasons, the motion for attorneys' fees is denied, and the motion for an appeal bond is granted in part.

**Motion for Attorneys' Fees**

A case qualifies as "exceptional" under section 285 of the Patent Act if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  Id.  "[T]here is no precise rule or formula for making these determinations."  Id. (internal quotation marks omitted) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  Potentially relevant factors include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Id. at 1756 n.6 (quoting Fogerty, 510 U.S. at 534 n.19)).

The defendants argue that Chizmar's claims "had no substantive strength." (Defs.' Br. on Mot. for Att'ys' Fees 7.)  While the Court ultimately found them unpersuasive, an award of fees under section 285 is not "a penalty for failure to win a patent infringement suit." Octane Fitness, 134 S. Ct. at 1753 (quoting Park-In-Theatres, Inc. v. Perkins, 190 F.2d 137, 142 (9th Cir. 1951)); see also Stragent, LLC v. Intel Corp., No. 6:11-cv-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (Dyk, J., Fed. Cir., sitting by designation) ("the mere fact that the losing party made a losing argument is not a relevant consideration").  With respect to the '640 Patent, the defendants characterize Chizmar's arguments concerning the location of "column-like thick portions" as "nonsensical" and "[in]coherent" (Defs.' Br. on Mot. for Att'ys' Fees 7), but without demonstrating why such pejorative labels are appropriate, and instead relying on selective quotation from Chizmar's testimony.  The defendants' opening brief devotes a single

paragraph to Chizmar's arguments concerning the '140 Patent (id. at 8), and fails to show that Chizmar's assertion of that patent rose to the level of frivolousness.  Nothing in the record indicates that Chizmar's claims were brought in bad faith.

The defendants also fault Chizmar for conducting an "inadequate" pre-suit investigation.  (Id. at 9.)  They claim that a more thorough pre-suit examination of the allegedly infringing Flex Binders would have shown him that his claims were meritless.  The Court's summary judgment decision, however, turned less on the attributes of the Flex Binders themselves than on questions of claim construction.  The Court's holding that the Flex Binders did not infringe Claim 17 of the '640 Patent was in large part dictated by its determination that the claim required thick portions on opposite sides of the binder ring.  See 2015 WL 2408818, at *8–9.  The Court's conclusion that Claim 20 of the '140 Patent was not entitled to the benefit of the '640 Patent's earlier filing date turned entirely on an examination of both patents; the Flex Binders did not enter into the equation.  See id. at *3–7.  This case was thus unlike "cases in which a defendant's noninfringement can be factually proven and a plaintiff's putative cause of action clearly eliminated before filing suit."  Small v. Implant Direct Mfg. LLC, No. 06 Civ. 683(NRB), 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014) (declining to award attorney's fees under section 285).  The Court thus does not agree that Chizmar's failure to conduct an in-depth pre-suit examination of the Flex Binders renders this case "exceptional."

Next, the defendants claim that Chizmar's failure to secure third-party expert testimony in support of his doctrine of equivalents argument makes this case "exceptional."  They cite no authority suggesting that this is a requirement, however.  In the two cases they rely on, the losing party not only failed to produce any admissible evidence for its position, but also engaged in litigation misconduct.  See Homeland Housewares, LLC v. Sorensen Research, 581

F. App'x 877, 880, 881 (Fed. Cir. 2014) (the losing party "did not seem to understand its obligation to produce evidence in opposing summary judgment" and made "repetitive and unsolicited filings"); IPVX Patent Holdings, Inc. v. Voxernet LLC, No. 5:13-cv-01708 HRL, 2014 WL 5795545, at *5, *6 (N.D. Cal. Nov. 6, 2014) (the losing party "[f]ail[ed] to develop any evidence to support [its] infringement position" and "prosecuted this case in assembly-line fashion").  Here, by contrast, Chizmar relied on the testimony of ACCO's director of product innovation, and the defendants have not shown that this was in any way improper.

Finally, the defendants argue that Chizmar's conduct in settlement discussions demonstrates that he filed this action merely to extract an unreasonable settlement from the defendants.  The record, however, does not support this conclusion.  The defendants complain that Chizmar's first two settlement offer amounts were "manufactured . . . out of thin air, before obtaining any sales figures relating to the accused products."  (Defs.' Br. on Mot. for Att'ys' Fees 5.)  However, in Chizmar's telling—which the defendants do not challenge—a settlement proposal was solicited by ACCO's in-house counsel before any sales figures were produced, and the defendants in fact never supplied sales figures for the Flex Binders before the start of discovery, despite repeated requests to do so.  (Opp'n to Mot. for Att'ys' Fees 5–6, 8.)  The defendants also take issue with the statement, made by Chizmar's counsel in an email, that the amount for which Chizmar would be willing to settle "will change if we begin litigating."  (Kier Decl. Ex. 1.)  Standing alone, this statement is a thin reed on which to base the conclusion that Chizmar's intent was to intimidate the defendants into settling rather than bearing the costs of an expensive litigation.  The cases on which the defendants rely involve much more egregious conduct.  See Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (the plaintiff, a "non-practicing entity," "filed over 100 lawsuits against a number of diverse

defendants" which were then "followed by a demand for a quick settlement at a price far lower than the cost of litigation"); Chalumeau Power Sys. LLC v. Alcatel-Lucent, Civ. No. 11-1175-RGA, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014) (the plaintiff's case was subject to a license defense, based on a license that the plaintiff knew of before filing suit and which the defendant could only learn of through discovery); Lumen View Tech., LLC v. Findthebest.com, Inc., 24 F. Supp. 3d 329 (S.D.N.Y. 2014) (the plaintiff threatened "full-scale litigation," "protracted discovery," and "threatened to increase its settlement demand every time [the defendant] filed a responsive pleading").

In sum, the defendants have not shown that either the weakness of Chizmar's arguments or his conduct during this litigation was "exceptional" under section 285, and accordingly the motion for attorneys' fees must be denied.


**Motion for Appeal Bond**

Rule 7 of the Federal Rules of Appellate Procedure provides, in relevant part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  "Rule 7's purpose appears to be 'to protect the rights of appellees brought into appeals courts' by appellants who pose payment risks."  16A Charles Alan Wright et al., Federal Practice and Procedure § 3953 (4th ed. 2008) (quoting Adsani v. Miller, 139 F.3d 67, 75 (2d Cir. 1998)).  "[I]t is discretionary with the district court whether to require a bond."  Id.; see also Adsani, 139 F.3d at 79.  When determining whether a bond is appropriate, courts have typically considered the following factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the

appellant has shown any bad faith or vexatious conduct." Stillman v. InService Am. Inc., 838 F.

Supp. 2d 138, 140 (S.D.N.Y. 2011) (quoting Baker v. Urban Outfitters, Inc., No. 01 CV 5440

LAP, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006)).

        The defendants request an order requiring Chizmar to post a $75,000 bond to

cover their fees and costs on his appeal.  The Court agrees with Chizmar, however, that

attorneys' fees are not properly included in a Rule 7 bond in this case.  In Adsani, a copyright

case, the Second Circuit affirmed the district court's imposition of a Rule 7 bond that included

attorneys' fees, but stressed the fact that under section 505 of the Copyright Act, 17 U.S.C § 505,

attorneys' fees may be awarded to the prevailing party "as part of the costs."  Adsani, 139 F.3d at

73, 75.  In a patent case, attorneys' fees are not recoverable unless the case is "exceptional," 35

U.S.C. § 285, and as explained above, the Court does not believe that this is an exceptional case.

If the purpose of a Rule 7 bond is to ensure that appellees recover the costs to which they may be

entitled if they prevail, there is no reason why one should include fees that will not be

recoverable.  See Adsani, 139 F.3d at 75 ("We do not think it either bizarre or anomalous for the

amount of the bond to track the amount the appellee stands to have reimbursed.  One could as

easily call the converse situation 'anomalous.'"); Baker, 2006 WL 3635392, at *1 ("Under Rule

7, security for costs may also include attorneys' fees to which a party is entitled, or potentially

entitled, under substantive statutes such as the Copyright Act.").

        In the alternative, the defendants request that the Court impose a bond covering

only their costs, which they estimate at $2,000.  The Court concludes that a bond is warranted,

and that $2,000 is a reasonable amount.  Chizmar has submitted documentation showing that he

has around $1,300 in his bank accounts.  (Chizmar Decl. Ex. A.)  His only other significant asset

is a 2004 Honda.  (Chizmar Decl. ¶ 9.)  His relative lack of assets, combined with the fact that a

portion of those assets is located abroad, makes him a payment risk.  See Adsani, 139 F.3d at 75

(affirming the district court's determination that the appellant posed a payment risk because she

had no assets in the United States and failed to post a supersedeas bond).  However, Chizmar has

not shown that his lack of assets is such that requiring a $2,000 bond will thwart his appeal.

With respect to the third factor enumerated in Stillman, the Court of course believes that

Chizmar's appeal lacks merit.  Accordingly, because three of the four Stillman factors favor

requiring an appeal bond, the Court will exercise its discretion to impose a bond in the amount of

$2,000.


**Conclusion**

        For the foregoing reasons, the motion for attorneys' fees is DENIED, and the

motion for an appeal bond is GRANTED in part.  Within 30 days, the plaintiff shall post a bond

in the amount of $2,000 as security for costs associated with his appeal.

        SO ORDERED.


P. Kevin Castel
United States District Judge


Dated: New York, New York
      July 17, 2015